Filed 6/6/25  In re A.A. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.A., et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E085488 |
| Plaintiff and Respondent, | (Super.Ct.No. INJ2000263) |
| v. | OPINION |
| T.A., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Elizabeth Tucker, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Conditionally reversed and remanded with directions.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

1

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Catherine E. Rupp, Deputy County Counsel, for Plaintiff and Respondent.

T.A. (mother) appeals from orders terminating parental rights over her minor children. She argues the county welfare department (the department) made an inadequate inquiry into her children's possible Indian ancestry under the California Indian Child Welfare Act (Cal-ICWA/ICWA), as the department failed to contact identified extended family members.[1] We agree and therefore conditionally reverse and remand with directions.

BACKGROUND

## A. Procedural History

Mother has three children: C.G. (born 2009), B.G. (born 2011), and A.G. (born 2020). An earlier dependency case involving mother began in 2020 with allegations that the children's father was violent toward mother and that he used heroin and mother used marijuana. That dependency ended with mother gaining sole legal and physical custody of the children.

In November 2022 the department received a report alleging mother's home "was dirty and appeared to be a hoarding house," and that mother may have been using methamphetamine. The department filed a section 300 petition in February 2023. In

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code. "In addition, because ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*), disapproved on other grounds in *In re Dezi C.* (2024) 16 Cal.5th 1112 (*Dezi C.*).)

March 2023 the court found the petition stated a prima facie case and granted mother family maintenance services.

In July 2023 police conducted a welfare check on C.G. at his great-uncle's house, where he told officers that mother had tried to strangle him, that his parents were still together, that they allowed strange people in the home, and that he believed the parents were doing drugs with those people.

That same month the department filed a section 387 petition, arguing the prior disposition was ineffective because mother abused substances, used inappropriate physical discipline, engaged in domestic violence with father, and neglected the children by leaving them alone at night and allowing strangers into the home. The court sustained the petition at a July 31, 2023, jurisdiction and disposition hearing, continued to detain the children, and ordered reunification services for mother.

The court continued mother's reunification services until a contested 12 month review hearing in August 2024, where it terminated reunification services and set a section 366.26 hearing. At that hearing in December 2024, the court terminated the parents' parental rights.

## B. ICWA Inquiry

The department first conducted an ICWA inquiry during the family's 2020 dependency. In that case, both parents filed forms—known as ICWA-020—denying Indian ancestry. Mother and father both consistently denied Indian ancestry throughout both dependencies.

3

The department asked no other extended family members whether the children had Indian ancestry, despite being in contact with several family members. In March 2023, the department called paternal grandfather but only left a voicemail. In July 2023, C.G. was staying with his maternal great-uncle and maternal great-grandmother when he told police his mother attacked him. Maternal great-grandmother was assessed for placement, attended visits, and attended hearings, yet no ICWA inquiry was reported.

On July 2, 2023, the department spoke to "an adult maternal cousin" with no ICWA inquiry reported.

In January 2024, the department reported that mother's visits were being supervised by a maternal grandmother. This apparently continued through at least July 2024. This is the first reference to a maternal grandmother, and the only reference to her supervising visits or otherwise having frequent contact with the family. However, the record does refer to a maternal *great*-grandmother supervising visits, so these references to maternal grandmother may refer to the maternal great-grandmother. Regardless, no ICWA inquiry is reported.

In February 2024, the department spoke to paternal grandmother, who voiced no concerns with the children returning home and said that father had been staying with her. Sometime before March 2024, mother also told the department she had been driving paternal grandfather's car but no longer had access to it.

In March 2024, the department attempted to place C.G. with paternal grandmother, but C.G. refused. In December 2024 the children told the department they

4

had contact with the maternal great-grandmother and family friends, and that they did not wish to have contact with any other family members.  The department also spoke to a maternal great-aunt who wished to be able to contact the children.  No ICWA inquiry of any of these relatives is reported.

At the section 366.26 hearing in August 2024 the juvenile court held ICWA did not apply, that the children are not Indian children, and that the department had conducted an adequate inquiry.

In January 2025—after the parents' parental rights were terminated—the department reported that it was unable to contact the family "to inquire about . . . the [ICWA]," and that they last spoke to mother about two weeks earlier.  However, they were able to speak to C.G., who told them maternal grandmother may have Indian ancestry.[2]  He told the department that he knew her first name and the city she lived in— Yucca Valley—but had no further contact information.  The department then reported that it had completed a "Family Connections search" and that they "had contact with maternal and paternal relatives."

---

[2]  The report states that these events—the department's inability to contact the family and C.G.'s statements about his maternal grandmother—happened in January 2024.  However, they are in a report filed in January 2025, and these events are not referenced in any earlier report.  The report states the department has had no contact with mother since January 12, 2024, yet the department was able to contact mother throughout 2024.  It thereby is clear enough that the references to January 2024 in the January 2025 report actually refer to January 2025.

ANALYSIS

The federal Indian Child Welfare Act (ICWA) establishes minimum national standards "for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture." (25 U.S.C. § 1902.) Under California law, the trial court and county welfare department have "an affirmative and continuing duty to inquire" whether a child subject to a section 300 petition may be an Indian child. (§ 224.2, subd. (a); see *In re D.F.* (2020) 55 Cal.App.5th 558, 566 (*D.F.*).) "This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal [ICWA] notice." (*D.F.*, at p. 566.)

The initial duty applies in every dependency. (*In re J.S.* (2021) 62 Cal.App.5th 678, 686; see § 224.2, subd. (b)(1).) The initial duty expands under subdivision (b)(2) of section 224.2, when a child is removed from their home. Under that provision, if a child is taken into custody, the department's obligation "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b)(2).) Extended family members include adults who are the child's stepparents, grandparents, aunts, uncles, brothers, sisters, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

6

Effective September 2024, Assembly Bill No. 81 (2023-2024 Reg. Sess.) (Stats. 2024, ch.656) amended section 224.2 to clarify that this duty applies whenever "a child is placed into the temporary custody of a county probation department pursuant to Section 307, or received and maintained in temporary custody of a county welfare department pursuant to paragraph (1) of subdivision (a) of Section 306, or taken into or maintained in the temporary custody of a county welfare department pursuant to paragraph (2) of subdivision (a) of Section 306, or if they were initially taken into protective custody pursuant to a warrant described in Section 340." (§ 224.2, subd. (b)(2); Assembly Bill No. 81 (2023-2024 Reg. Sess.); see, e.g., Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assembly Bill No. 81 (2023-2024 Reg. Sess.) as amended Aug. 19, 2024, p. 5 [the bill "[c]larifies the timing, duration, and scope of a county department's, and a court's, duty to inquire whether a child is or may be an Indian child"].) Because this bill merely clarifies the ICWA inquiry duty, we conclude it applies to ICWA inquiries and findings that predated the enactment of Assembly Bill No. 81. (See *Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 922 ["A statute that merely clarifies, rather than changes, existing law is properly applied to transactions predating its enactment."].)

"[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.) Therefore, if "a juvenile court's findings that an inquiry was adequate and proper and [ICWA] does

7

not apply are found to be supported by sufficient evidence and record documentation as required by California law [citation], there is no error and conditional reversal would not be warranted even if the agency did not inquire of everyone who has an interest in the child." (*Ibid.*) This rule only applies, however, when there is a well-developed record, and " ' "the less developed the record, the more limited that discretion necessarily becomes." ' " (*Ibid.*) "If a child welfare agency fails to obtain meaningful information or pursue meaningful avenues of inquiry—by, for example, failing to discover that a parent was adopted, or failing to inquire further after a parent identified an extended family member with more information about the child's potential Indian ancestry—those facts would be relevant to whether the initial Cal-ICWA inquiry is adequate." (*Id*. at p. 1151.)

Here, we are not reviewing a fact that comes through a trial court's resolution of an evidentiary conflict, but the trial court's finding that the department's "inquiry and due diligence were 'proper and adequate.' " (*Dezi C*., *supra*, 16 Cal.5th at p. 1134.) We are thus "not concerned with the outcome" (*id*. at p. 1144) as to the likelihood of whether the child is Indian and do not limit our review to "[e]nforcing the requirement of an adequate inquiry only in cases in which the record affirmatively demonstrates a reason to believe the child is an Indian child." (*Id*. at p. 1147.) Instead, we are "ensuring that tribal heritage is acknowledged and inquired about in dependency cases." (*Id*. at p. 1148.) This mission requires that we engage in a searching review to protect compelling and legally protected tribal interests. (See *id*. at p. 1147.) Yet the deferential standard requires that we not find error just because the inquiry was not flawless.

8

Finally, if our review reveals "error resulting in an inadequate initial Cal-ICWA inquiry," then we must order "conditional reversal with directions for the child welfare agency to comply with the inquiry requirement of section 224.2, document its inquiry in compliance with [California Rules of Court], rule 5.481(a)(5), and when necessary, comply with the notice provision of section 224.3." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1136.)

We conclude the trial court's finding that the department's ICWA inquiry was adequate is not supported by substantial evidence. The department simply asked no family members other than the parents and one child about any potential Indian ancestry. Moreover, when C.G. disclosed his belief that his maternal grandmother had some Indian ancestry, it does not appear that the department attempted to follow up.

To be sure, the record discloses only a handful of family members the department knew about or with whom they were in contact: a maternal great-uncle, a maternal great-aunt, maternal grandmother, a maternal great-grandmother, a maternal cousin, and the paternal grandparents. The department also argues, correctly, that many of these family members—the great-uncle, great-aunt, and great-grandmother—are not extended family members for purposes of Cal-ICWA.

However, that still leaves a maternal cousin, maternal grandmother, and paternal grandparents, all of whom are extended family members under Cal-ICWA. The department's failure to ask paternal grandmother is particularly notable. The department was in direct contact with paternal grandmother and was attempting to have C.G. placed

9

with her but failed to ask her about whether the children had Indian ancestry. Doing so would not have increased their burden at all, and it is highly likely that the paternal grandmother would have valuable information—even if that information was just corroborating the parents' denials.

The department does not attempt to defend this decision, instead arguing "the record is sufficiently well-developed here," such that failing to inquire with paternal grandmother did not render the overall inquiry inadequate. In support of the notion that the record is well-developed, the department points to the parents' consistent denial of Indian ancestry and argues this was sufficient evidence that no other inquiry was necessary.

We disagree. The purpose of the initial inquiry requirement is to compel the department to ask people other than the parents about the children's Indian ancestry. Section 224.2, subdivision (b), "requires the [d]epartment to ask, as part of its initial duty of inquiry, extended family members (including the biological grandparents) whether the child is or may be an Indian child," and nothing "relieves the [d]epartment of its broad duty to seek that information . . . simply because a parent states on the ICWA-020 form . . . 'I have no Indian ancestry as far as I know.' " (*In re Y.W.* (2021) 70 Cal.App.5th 542, 554 (*Y.W.*).) "Such a rule ignores the reality that parents may not know their possible relationship with or connection to an Indian tribe." (*Id*. at p. 554.) Moreover, the department's "position ignores the express obligation that section 224.2, subdivision (b), imposes on the [d]epartment to inquire of a child's extended family members—regardless

10

of whether the parents deny Indian ancestry." (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 431.) Accordingly, failure to inquire with the paternal grandmother was error.

The department argues *In re Y.W.* is distinguishable. Specifically, the department argues "[t]he current ICWA-020s address the concerns raised by the court," in *In re Y.W.*, because in this case they required mother to declare "neither she nor the children are or may be members of, or eligible for membership in a federal recognized tribe." In contrast, the forms in *In re Y.W.* required parents to state only that they did not have Indian ancestry as far as they knew. (*In re Y.W.*, *supra*, 70 Cal.App.5th at p. 554.)

This is a distinction without a difference. Whatever the wording of the ICWA-020, *In re Y.W.* holds that a parent disclaiming Indian ancestry does not relieve the department of its duty of initial inquiry. That the form now requires them to disclaim it in a somewhat more forthright way does not change the department's duties. It does not matter how a parent claims or disclaims Indian ancestry; the department is still obligated to conduct an initial inquiry of extended family members.

We therefore conclude that the department failed to conduct an adequate initial inquiry because it failed to inquire with the paternal grandmother, even before we address the department's failures to inquire with other family members. Nevertheless, we also conclude that the department should have inquired with the identified maternal cousin and paternal grandfather at minimum. The department had already attempted to contact paternal grandfather at least once, and mother claimed that she was driving his car at some point. The department therefore had his contact information, and could have

11

obtained further information from mother.  Perhaps a good faith attempt to contact paternal grandfather would not have succeeded and will not succeed on remand.  But such an effort is required, and the record does not disclose such an effort.  The same goes for maternal cousin.  The department spoke to an unidentified maternal cousin early in the dependency and never again.  The department does not appear to have attempted to identify this maternal cousin, or obtain any contact information for the maternal cousin despite being in close contact with maternal great-grandmother.  Failure to do so was error.

Finally, after mother's parental rights were terminated, C.G. disclosed his belief that a previously undisclosed maternal grandmother may have Indian ancestry.  This too warrants at least an attempt to locate and speak to her.  (See *In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 741 ["Violations of ICWA ' "render[] the dependency proceedings, including an adoption following termination of parental rights, vulnerable to collateral attack if the dependent child is, in fact, an Indian child." ' "].)  While a child welfare agency is not required to speak to every identified extended family member, here the department knew that an identified extended family member may themselves be Indian, and would therefore likely have information relevant to determining whether the children are Indian.  (See *Dezi C.*, *supra*, 16 Cal.5th at pp. 1167-1168 (dis. opn. J. Groban) [stating the two dissenting justices "do not read the statute as requiring that an initial Cal-ICWA inquiry be made of every member of a child's extended family," and that "[t]he better reading is . . . that these are '*examples* of the categories of people a social services

12

agency or court should inquire of' "]; see also *id.* at pp. 1152-1153 (conc. opn. J. Kruger) [agreeing with the dissent on this point].) We are sympathetic to the fact that C.G. could not provide the maternal grandmother's last name, contact information, or specific whereabouts beside the city he believed she lived in. However, on remand, the department will presumably be able to ask other family members about maternal grandmother's name and contact information.

"[A] social services agency has the obligation to make a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status." (*In re K.R.* (2018) 20 Cal.App.5th 701, 709.) We cannot say the department made a meaningful effort to locate and interview the children's extended relatives when it failed to ask paternal grandmother, failed to talk to paternal grandfather, failed to ask or even identify the maternal cousin, and failed to follow up on C.G.'s information that maternal grandmother may be Indian. Though "ICWA does not obligate the court or [the department] 'to cast about' for investigative leads," it also does not allow the department to escape its duty of inquiry by failing to investigate. (*In re A.M.* (2020) 47 Cal.App.5th 303, 323, disapproved on other grounds in *Dezi C.*, *supra*, 16 Cal.5th at p. 1152, fn. 18.)

Accordingly, we conditionally reverse and remand to permit the department to complete its inquiry.

13

## DISPOSITION

We conditionally reverse the order terminating the parents' parental rights. We remand the matter to the juvenile court with directions to comply with the inquiry provisions of ICWA and of sections 224.2 and 224.3—and, if applicable, the notice provisions as well—consistent with this opinion. If, after completing the initial inquiry, neither the department nor the court has reason to know that the children are Indian children, then the court shall reinstate the order terminating parental rights. If the department has reason to know the children are Indian children, the court shall proceed accordingly.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:

McKINSTER
Acting P. J.

CODRINGTON
J.

14